IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LESTER WRIGHT,

    Plaintiff,

v.                                                                                  CASE NO. 1:14-cv-152-MP-GRJ

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____/

# REPORT AND RECOMMENDATION

    Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for disability insurance benefits and Supplemental Security Income.  (Doc. 1.)   The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions.  (Docs. 22, 23.)  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

    Plaintiff protectively filed an application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income benefits on January 12, 2012, alleging disability beginning April 30, 2003.  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested a hearing before an administrative law judge. Administrative Law Judge ("ALJ") Patrick F. McLaughlin conducted a hearing on February 28, 2013.  (R. 34-63.) The ALJ issued a written decision on April 16, 2013 finding the Plaintiff not disabled.  (R. 21-29.) The Appeals Council denied review on

July 30, 2014. (R. 1-4.) Plaintiff then appealed the ALJ's decision to this Court.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

---

[1] See 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

**A.    Medical Records**

Plaintiff's claim for disability stems from his pain in his lower back and leg that started after a car accident in 1999 and worsened after a car accident in 2012. In August 2011, Plaintiff visited University of Florida Orthopedic and Sports Medicine Group, complaining of pain in his tailbone and left leg weakness. He reported that he had seen a chiropractor, but it had not helped, and he had not yet attempted physical therapy. He further stated that pain medications did not significantly ease the pain. A range of motion test revealed abnormal flexion and extension, but radiological reports showed that Plaintiff had no significant abnormalities. (R. 262-269.)

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

In October 2011, Plaintiff underwent an electromyography (EMG) and nerve conduction study which yielded normal results. (R. 257-261.) Plaintiff had a sacroccocygeal joint and ganglion impar injection, which provided 25% pain relief. Plaintiff's physical exam on December 8, 2011 was within normal limits, except for some tenderness. (R. 251-253.) Plaintiff was referred to pain management.

Plaintiff first visited the Florida Pain and Rehabilitation Center in June of 2012. He reported experiencing lower back pain for several years and noted that it had become significantly worse after a car accident on June 4, 2012. His physical exam evidenced a significantly decreased range of motion to his lumbar spine with severe tenderness upon palpation. The straight leg test was positive on the left side. Plaintiff was prescribed Neurontin for pain. (R. 289-294.)

On July 18, 2012, an MRI of the lumbar spine revealed a small disc herniation at L3-L4 and some mild spinal stenosis, a small disc herniation at the L4-L5 level and some mild spinal stenosis, and a posterior disc/osteophyte complex and a slightly larger disc herniation at the S5-L1 level. The MRI showed moderate neural foraminal stenosis on the right (compression of a spinal nerve) and mild stenosis on the left. (R. 299-302.)

**B.   Hearing Testimony**

Plaintiff, a 37 year old male, testified that his previous work experience from 1998 to 2004 included working for Tri County Mowing, Scherer Construction Engineering Company, Labor Ready, and Traffic Control Products. During this time period, Plaintiff performed tasks such as "weed eating," construction, operating a front end loader, and highway maintenance. Plaintiff completed the eleventh grade and left

school during twelfth grade to start work to support his child. (R. 37-44.)

Plaintiff testified that he was involved in two previous car accidents, which he believes are the cause of his pain. He stated that his left side is weak and he has sharp pains shooting down his left side that sometimes occur on his right side as well. He says that he also has bad muscle spasms. Plaintiff claims that he is in pain management but has never had surgery. He takes Mobic, Amitriptyline, Gabapentin, and Flexural to control his pain. (R. 45-46.)

Plaintiff stated that he rarely takes care of his two-year-old child because the medications that he takes make him sleepy. He testified that does grocery shopping with his wife, cooks "every now and then," sometimes does laundry but cannot put clothes in the dryer, and goes to church twice a month but has to get up to move during the service. Plaintiff also admitted to prior illegal drug use, but stated he had not used any illegal drugs for 11 months and quit because the drugs would not mix with his medication. (R. 50-53.)

Upon examination by his attorney, Plaintiff stated that after his first car accident in 1999, he returned to work but was laid off because he could not perform adequately. He stated that the medication he takes makes him "blurry eyed" and sleepy. Plaintiff stated that his pain is getting worse over time and that he has trouble sleeping at night. He testified that he uses a cane "all the time." (R. 53-55.)

**C.     Findings of the ALJ**

The ALJ found that Plaintiff had the severe impairment of disorders of the back, including degenerative disk disease of the lumbar spine, and radiculopathy with

herniation.  The ALJ did not find that any impairment met the severity of one of the listed impairments.  The ALJ found that Plaintiff's residual functional capacity ("RFC") is as follows:

> "[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with limitations.  The claimant can occasionally lift ten pounds and frequently lift five pounds.  The claimant can sit for six hours, and stand for two hours, out of an eight-hour workday.  In addition, the claimant must have a sit/stand option, with the ability to change positions every 15 minutes.  Further, the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl.  Moreover, the claimant can have no exposure to heights, hazards, or vibrations."

(R. 24.)  Based on this RFC, the ALJ found that the claimant was unable to perform his past relevant work but could perform other jobs that exist in significant numbers in the national economy, including such jobs as addresser, document preparer, and telephone quotation clerk.  (R. 27-28.)

## IV.  DISCUSSION

On appeal, Plaintiff argues that the ALJ's credibility finding violated the pain standard of the Eleventh Circuit.  Plaintiff contends that the ALJ's finding that "the medical evidence did not support Plaintiff's allegation that he was unable to perform any work activity" was the incorrect interpretation of disability, and instead the ALJ should have determined whether Plaintiff was able to work on a "regular and continuing basis," or eight hours a day for five days a week or an equivalent work schedule.

A claimant may establish his disability through his own testimony of pain or other subjective symptoms.[21]  The ALJ must consider a claimant's testimony of pain and

---

[21] See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1560–61 (11th Cir.1995).

other subjective symptoms where the claimant meets the Eleventh Circuit's three-part "pain standard."[22] Under that test, evidence of an underlying medical condition must exist.[23]   If that threshold is met, then there must be either objective medical evidence that confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms.[24]  A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.[25]

If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work.[26]  In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and his doctors.[27]  The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage,

---

[22]  See Foote, 67 F.3d at 1560.

[23] Id.

[24] Id.

[25] Id. at 1561.

[26] 20 C.F.R. § 404.1529(c)(1).

[27] Id. § 404.1529(c)(1)-(2).

effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve his pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to his pain or symptoms.[28]  The ALJ then will examine the claimant's statements regarding his symptoms in relation to all other evidence, and consider whether there are any inconsistencies or conflicts between those statements and the record.[29]

If the ALJ decides not to credit the claimant's testimony as to his subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding.[30]  While the ALJ does not have to cite particular phrases or formulations, broad findings that a claimant was incredible and could work are, alone, insufficient for the Court to conclude that the ALJ considered the claimant's medical condition as a whole.[31]  The ALJ's articulated reasons must also be supported by substantial evidence.[32]  The Court will not disturb a properly articulated credibility finding that is supported by substantial evidence.[33]  The failure to articulate reasons for discrediting a claimant's subjective testimony, however, requires that the testimony be accepted as true and becomes grounds for remand where credibility is

---

[28] Id. § 404.1529(c)(3).

[29] Id. § 404.1529(c)(4).

[30] See Foote, 67 F.3d at 1561–62.

[31] Id. at 1562.

[32] Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir.1991).

[33] Foote, 67 F.3d at 1562.

critical to the outcome of the case.[34]

In this case, the ALJ determined that Plaintiff had a medically-determinable impairment that could reasonably be expected to produce his symptoms, and therefore the ALJ evaluated the intensity and persistence of Plaintiff's symptoms in determining how they limit his capacity for work, as reflected in the records and hearing testimony.[35] The ALJ concluded that Plaintiff's complaints were not credible to the extent they were inconsistent with the RFC. In making this determination the ALJ discussed the evidence that supported his credibility findings.

The ALJ expressly discussed and relied upon the medical evidence to support his conclusions regarding Plaintiff's credibility.[36] The ALJ noted that Plaintiff went to the emergency room in May 2010 complaining of chest pain, which was determined to be non-cardiac. He discussed Plaintiff's visits to the University of Florida Orthopedic and Sports Medicine Group in August 2011 for his tailbone pain and weakness in his legs. As support for his finding that Plaintiff was not credible the ALJ relied upon the fact that the radiological reports showed no significant abnormalities, the x-ray of the sacrum and coccyx was normal, and x-rays of the lumbar spine showed only minor degenerative changes at L2-L3.

The ALJ also relied upon and discussed Plaintiff's electromyography and nerve conduction study in October 2011, which yielded normal results and showed no

---

[34] Id.

[35] See 20 C.F.R. 404.1529(c)(1)-(2).

[36] See 20 C.F.R. § 404.1529(c)(2).

evidence of a left-sided lumbar radiculopathy in the L2-S1 myotomes nor a left-sided tibial or common peroneal mononeuropathy.  The ALJ also pointed to Plaintiff's physical exam on December 8, 2011, which was normal except for tenderness.  (R. 25-26.)

Further in making his credibility determination, the ALJ also discussed and reviewed Plaintiff's treatment for lower back pain at the Florida Pain and Rehabilitation Center.  Plaintiff's physical examination at the Center showed decreased range of motion of his lumbar spine, with tenderness upon palpation, and a positive straight leg test on the left side.  Plaintiff had an MRI performed at the Center in July 2012, which evidenced a small left disc herniation and mild spinal stenosis at both the L3-L4 level and the L4-L5 level and a posterior disc/osteophyte complex and a right lateral disc herniation at S5-L1.  The MRI showed moderate neural forminal stenosis on the right and mild stenosis on the left.

Based upon the medical evidence, the ALJ found the Plaintiff not to be a credible reporter of his pain because Plaintiff's complaints of pain were disproportionate to the objective medical evidence.  The ALJ pointed out that although Plaintiff complained of totally disabling pain (rating his pain an average of 19 out of 25, with 25 requiring hospitalization), the x-rays and MRI showed only mild degenerative changes, small herniations, and mild stenosis.  The ALJ also pointed out that the results for the nerve conduction study were normal  The ALJ specifically accounted for Plaintiff's limitations due to his disc problems in the RFC assessment by including the sit/stand option, the lifting restrictions, the occasional postural limitations, and the restriction on exposure to heights, hazards, and vibrations.

*Case No. 1:14-cv-152–MP-GRJ*

The ALJ also pointed to other factors besides the medical evidence that evidenced that Plaintiff's complaints of disabling pain were not entirely credible. For example, the ALJ noted that Plaintiff failed to include in his work activity report that he was hired by Williams Painting on September 20, 2010. This omission was significant in view of the fact that the work activity occurred after Plaintiff's alleged onset date.

Additionally, the ALJ noted even though Plaintiff testified that he uses his cane all the time there is no evidence in the medical record that a cane was medically necessary. The ALJ also pointed out that although Plaintiff testified that he told his doctors of the side effects of his medications, the medical records do not contain any notation of complaints about side effects from medications. Finally, the ALJ observed that this case was Plaintiff's fourth disability application, and that when coupled with Plaintiff's pending lawsuit regarding the June 2012 car accident, was evidence of benefit seeking behavior.

Finally, in discrediting Plaintiff's allegations of disabling pain the ALJ relied upon the medical reports prepared by the State Agency medical consultants. For example, State agency medical consultant, Sunita Patel, found that Plaintiff was not precluded from all level of vocational functions. Dr. Patel opined that Plaintiff was capable of light work with the following limitations: Plaintiff could frequently lift ten pounds and occasionally lift 20 pounds, could stand/walk for six hours and sit for six hours out of an eight-hour workday, could frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds, and should avoid concentrated exposure to vibrations and hazards. Although the ALJ gave little weight to the opinion because he

determined that Plaintiff was more limited than Dr. Patel's assessment, the ALJ noted that Dr. Patel's assessment was consistent with his determination that Plaintiff was not disabled.

Plaintiff argues that the ALJ incorrectly articulated the legal definition of disability. In this regard Plaintiff focuses on the ALJ's statement that the record was not consistent with Plaintiff's allegation that he "could not perform any work activity." Plaintiff says that by using the incorrect legal definition of disability the ALJ erred in considering whether Plaintiff was disabled and failed to consider whether Plaintiff could maintain full time employment. According to Plaintiff, the correct legal definition is the standard stated in *Kelley v. Apfel*, 185 F.3d 1211, 1214-15 (11th Cir. 1999). In *Kelley* the court stated that "only an ability to do full-time work will permit the ALJ to render a decision of not disabled," and that the issue at Step Five is whether the claimant can perform work on a "regular and continuing basis," which means eight hours a day, for five days a week, or an equivalent work schedule. The ALJ's statement that Plaintiff could not perform any work activity is not at odds with the statement in *Kelley*. Commons sense dictates that the statement that someone is unable to perform any work activity would include the ability to do full-time work eight hours a day, five days a week. If an individual cannot do *any* work activity the individual would by necessity be unable to work five days a week eight hours a day. Thus, Plaintiff's argument that the ALJ erred by using the term unable to perform any work activity instead of unable to work a full time job makes no sense.

As the ALJ correctly established, when a claimants attempts to establish

disability through subjective statements about symptoms or pain, the claimant must also provide objective medical evidence that demonstrates a medical impairment which "could reasonably be expected to produced the pain or other symptoms alleged and which, when considered with all the other evidence, would lead to a conclusion that [the claimant is] disabled." 20 C.F.R. § 1529(a), (b); *Foote*, 67 F.3d at 1560. Then, as the ALJ explained, if the objective medical evidence does not support the alleged severity of the claimant's pain or symptoms but the claimant has established an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ then evaluates the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. 20 C.F.R. § 1529(c)(1). Relevant factors to consider include the claimant's daily activities, the location, duration, frequency, and intensity of the pain, precipitating and aggravating factors, medication taken for pain, treatment for pain relief, any other measures used to relieve pain, and other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. § 1529(c)(1)-(2).

This standard, which the ALJ applied in assessing Plaintiff's credibility as to the extent and limitations of his pain, is the appropriate standard for assessing a claimant's credibility. To the extent that Plaintiff argues that the ALJ failed to find the Plaintiff totally disabled because of his need to take breaks, the ALJ expressly accounted for these limitations in the RFC:

> "The claimant does have some limitations secondary to disc problems; however, these have been accounted for with the limitations in the residual functional capacity assessment. More specifically, his limitations are accommodated by

the sit/stand option, the lifting restrictions, the occasional postural limitations, and the restriction on exposure to heights, hazards, and vibrations." (R. 26.)

While Plaintiff argues that he is not able to work on a regular and continuing basis and thus is disabled, the ALJ never found that Plaintiff could not work a regular schedule.  The ALJ determined that Plaintiff's allegations of pain were not entirely credible for the reasons discussed above and instead accounted for Plaintiff's potential need to shift positions in the RFC.  The ALJ discussed and referred to the evidence he considered and relied upon in concluding that Plaintiff's complaints were not credible.  Therefore, the Court concludes that the ALJ's credibility finding was consistent with prevailing law and was supported by specifically identified substantial evidence.  Accordingly, there is no reason for the Court to disturb this finding.

## V.  RECOMMENDATION

In light of the foregoing it is **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED** and the Clerk should be directed to enter final judgment and close the file.

**IN CHAMBERS** at Gainesville, Florida this 16th day of June 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections

*Case No. 1:14-cv-152–MP-GRJ*

**shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636**.